UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br>　　v.<br>JAMEEL COLLINS,<br>　　　　　Defendant. | Case No. 16-cr-00244-SI-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**<br><br>Re: Dkt. No. 86 |

On December 15, 2017, the Court heard oral argument on defendant's motion to suppress. Dkt. No. 86. For the reasons set forth below, the Court DENIES the motion.

**BACKGROUND**

On June 9, 2016, the grand jury returned a six count indictment with forfeiture allegations against defendant Jameel Collins, Sr. Dkt. No. 1. The indictment charges the defendant with four counts of possession with intent to distribute controlled substances (heroin, methamphetamine, marijuana, and cocaine), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) or (b)(1)(D); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and using, carrying, or possessing a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The events underlying the indictment allegedly took place on February 25, 2016. The timeline of events at issue in this motion is largely undisputed.

On February 25, 2016, at approximately 12:30 p.m., Menlo Park Police pulled over defendant, who was driving on Bay Road in East Palo Alto. Dkt. No. 86-1, Def.'s Mot. Ex. A, Incident Report at JC-000067. Four police officers were present in the unmarked police vehicle that pulled defendant over: Detective Sergeant Eric Cowans, Detective Christopher Sample,

Detective Stephen Neumann, and Detective Tony Mendoza. *Id.*; Dkt. No. 88, Cowans Decl. ¶¶ 4-5, 8. Detective Sergeant Cowans states that he initiated an enforcement stop for two reasons: he observed that the passenger window of the car defendant was driving "had a dark tint," in violation of California Vehicle Code § 26708.5(a), and the registration tabs on the rear license plate were expired, in violation of California Vehicle Code § 4000(a)(1). Cowans Decl. ¶¶ 8, 10.

Detective Sergeant Cowans and Detective Neumann approached the driver's side of the car, where the window was rolled down. *Id.* ¶¶ 24-25. Detectives Sample and Mendoza approached the passenger side of the car, where the window was rolled up and had a dark tint. Detective Sample indicated for the passenger window to be rolled down. When it was, the officers were able to observe a young child, who turned out to be defendant's five-year-old son, sitting in the front passenger side of the vehicle, not in a child restraint seat. *Id.* ¶ 15; Incident Report at JC-000067. The officers also observed a digital scale on the front passenger seat next to the child, and "a significant quantity of marijuana . . . in plain view in a clear plastic bag near the front center console . . . . The marijuana was within arms-reach of the child." Cowans Decl. ¶¶ 16-17. The marijuana was later weighed and determined to weigh 23.94 grams, or less than one ounce.[1] *See id.* ¶ 18.

Based on footage from the officers' body cameras, it appears that approximately one and a half minutes after the stop was made, the officers removed defendant from the car, arrested him, and placed him in handcuffs. Dkt. No. 93, Paidipaty Decl. Ex. 9, Neumann Video 1 at 1:23; *see also* Cowans Decl. ¶ 20; Dkt. No. 87, Opp'n at 6. Officer Neumann walked defendant away from the car and sat him on the sidewalk. Neumann Video 1 at 2:53. After defendant was handcuffed, Detective Neumann searched his person and found $805.00 in cash, much of it "neatly folded and bound in a rubber band, in $100.00 increments." Dkt. No. 89, Sample Decl. ¶ 21. Also after defendant was handcuffed, Detective Sample "conducted a preliminary search of the driver's-side area of the vehicle." *Id.* ¶ 22. Detective Sample "located a coffee grinder, a plate, a straw, and a playing card on the floorboard of the driver's side and central area of the car." *Id.* ¶ 23. He

---

[1] One ounce equals 28.35 grams. *See* USSG § 2D1.1, Commentary n.8(D) (Nov. 1, 2016).

smelled the coffee grinder and believed that it smelled of heroin. *Id.* The plate, straw, and playing card also appeared to have heroin residue on them.[2] *Id.*

At some later point, Detective Sergeant Cowans recalled having arrested defendant on a prior occasion; on that occasion, a search of the vehicle revealed narcotics in a hidden compartment in the gear shift. Cowans Decl. ¶ 22. Based on this recollection, Detective Sergeant Cowans believed that the vehicle Collins was now driving might contain additional evidence of drug trafficking. *Id.* ¶ 24. He conducted "a more thorough search" of the car and located a hidden compartment in an air vent near the steering wheel. *Id.* ¶ 26. The hidden compartment contained heroin, methamphetamine, cocaine, and pills.[3] *Id.*; Incident Report at JC-000069. It also contained a .9mm handgun and two .9mm magazines loaded with thirteen rounds of ammunition. *Id.* The officers' declarations do not state how much time elapsed between the search that revealed the coffee grinder and the latter search that revealed the hidden compartment behind the air vents. The latter search is not recorded on any of the officers' body cameras;[4] however, the government states that the outcome of this search can be heard in the background of Detective Sample's body camera, when Detective Sergeant Cowans can be heard in the background stating, "Ahh, found it." Detective Sample then states, "Oh, well, we found the dope." *See* Opp'n at 10 (citing Dkt. No. 93, Paidipaty Decl. Ex. 5, Sample Video 3 at 14:45-15:01). The timestamp on

---

[2] The defense characterizes the initial search of the car that led to the discovery of the items with heroin residue as the "Second Search" and the search of defendant's person as the "Third Search." Dkt. No. 86, Mot. at 3-4. The officers' declarations are unclear on the exact order of these searches, though both sides agree that these two searches took place subsequent to defendant's arrest. *See id.*; Sample Decl. ¶¶ 21-23.

[3] The officers' declarations in support of this motion do not state that cocaine was located during this search. However, cocaine is listed on the Incident Report as one of the substances found in the hidden compartment and defendant is charged with possession of cocaine with intent to distribute. Incident Report at JC-000069; Indictment at 2 (Count Two).

[4] The Court previously held an evidentiary hearing regarding the inconsistent footage among the officers' body cameras. The cameras are turned on and off at various points during the stop and arrest of defendant, and Detective Sergeant Cowans's body camera did not record anything at all. Detective Sergeant Cowans has declared that he does not know why his camera failed to record any videos, but that he suspects the battery on the camera was dead. Cowans Decl. ¶ 27.

1    Detective Sample's body camera indicates that this occurred at roughly 1:56 p.m, or
2    approximately one and a half hours after the initial traffic stop. *See* Sample Video 3 at 14:45.

3    The body camera videos show that throughout the stop, both before and after defendant's arrest, defendant and the officers engaged in a back and forth exchange. Some of the statements that defendant made appear to have been unprompted. Defendant also made certain statements in response to direct questioning by the officers, after they placed him in handcuffs. *See, e.g.,* Neumann Video 1 at 6:05 ("You got anymore weed in the house?"); Dkt. No. 93, Paidipaty Decl. Ex. 4, Sample Video 2 at 4:23 ("Where's the, where's the, uh, tar at? I think you got it somewhere, right?"). Defendant stated at least five times, during roughly the first three and a half minutes of the traffic stop and arrest, that he had a cannabis card. *See* Neumann Video 1 at 00:25 ("I got a cannabis card. It's under an ounce. I smoke weed."), 00:33, 1:03, 2:14, 3:47 ("My cannabis card is right there in my wallet, man.").

The body camera videos show that the officers took defendant into their vehicle at approximately 2:17 p.m. for transportation to the station. Sample Video 3 at 35:55. At the station, Detective Sample read defendant his *Miranda* rights and proceeded to conduct a videotaped interview. Dkt. No. 93, Paidipaty Decl. Ex. 6, Sample Video 4 at 1:24.

Defendant now moves to suppress all evidence seized during the searches of his vehicle and of his person, including the statements that arose from those searches and seizures, all on Fourth Amendment grounds. Dkt. No. 86.

**LEGAL STANDARD**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. When a search is conducted without a warrant, the analysis begins "with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). For example, because there is a lesser

4

expectation in the privacy of one's vehicle than of one's person, a warrantless search of a vehicle may be conducted if there is probable cause to believe the vehicle contains contraband. *United States v. Ross*, 456 U.S. 798, 799 (1982). Searches incident to lawful custodial arrests are also excepted from the Fourth Amendment's warrant requirement. *United States v. Robinson*, 414 U.S. 218, 235 (1973). The government bears the burden of establishing that a warrantless search was reasonable and did not violate the Fourth Amendment. *United States v. Carbajal,* 956 F.2d 924, 930 (9th Cir. 1992), *cert. denied,* 510 U.S. 900 (1993) (citations omitted).

**DISCUSSION**

Defendant moves to suppress all evidence seized during the searches of his vehicle and of his person as well as the statements that arose from the searches and seizures. He does not contest the traffic stop or the seizure of the bag of marijuana and the digital scale. Rather, he argues that the arrest and subsequent searches were unlawful, and thus the fruits of those searches must be suppressed. Dkt. No. 94, Reply at 1.

The government argues that the searches of the vehicle were reasonable under the automobile exception and as a search incident to arrest. It also argues that the search of defendant's person was a valid search incident to arrest. For the following reasons, the Court largely agrees with the government, and therefore DENIES defendant's motion to suppress.

**I.      The Searches of the Vehicle Were Valid Under the Automobile Exception.**

The government argues that the bag of marijuana and the digital scale in plain view provided "probable cause to believe the vehicle contained additional evidence of contraband" and therefore the automobile exception to the Fourth Amendment justified the searches of the vehicle. Opp'n at 15-16. A defendant need not have been arrested in order for this exception to apply. *See United States v. Scott*, 705 F.3d 410, 417 (9th Cir. 2012).

The Supreme Court has held that police may conduct a warrantless search of a vehicle if they have probable cause to believe that the vehicle contains contraband. *Carroll v. United States*, 267 U.S. 132, 162 (1925); *see also United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010)

("[Police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime. . . . 'Probable cause to search is evaluated in light of the totality of the circumstances.'") (citations omitted). In *United States v. Ross*, the Supreme Court explained, "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." 456 U.S. at 825. The automobile exception "is motivated by the supposedly lower expectation of privacy individuals have in their vehicles as well as the mobility of vehicles, which allows evidence contained within those vehicles to be easily concealed from the police." *United States v. Camou*, 773 F.3d 932, 941 (9th Cir. 2014) (citations omitted). In this way, the automobile exception is broader than the exception for searches incident to arrest. *Id.* at 941-42. For instance, searches of vehicles under the automobile exception "need not be conducted right away." *Id.* at 942 (citing *United States v. Johns*, 469 U.S. 478, 487-88 (1985)).

The Ninth Circuit and district courts within this circuit have repeatedly found that the odor of marijuana alone justifies a search of a vehicle for additional contraband. In *United States v. Solomon*, the Ninth Circuit affirmed the denial of a motion to suppress in part because, once the officer smelled marijuana in the car, he then had "probable cause to search the inside of the car and, after finding no marijuana there, the trunk." 528 F.2d 88, 91-92 (9th Cir. 1975) (citations omitted); *see also United States v. Heiden*, 508 F.2d 898, 900-01 (9th Cir. 1974) (probable cause to search the trunk of a car "may be supplied by the smell of marijuana") (citations omitted); *United States v. Johnson*, 224 F. Supp. 3d 881, 885 (2016) (Alsup, J.) ("Our court of appeals has stated 'the fact that an agent familiar with the odor of marijuana smelled such an odor emanating from the automobile . . . alone was sufficient to constitute probable cause for a subsequent search for marijuana.'") (citing *United States v. Barron*, 472 F.2d 1215, 1217 (9th Cir. 1973); *United States v. Parker*, 919 F. Supp. 2d 1072, 1080 (E.D. Cal. 2013)).[5]

---

[5] The Court notes that many of the relevant Ninth Circuit cases date from the 1970's. It is possible that the Ninth Circuit will reconsider its position in light of the widespread and recent changes in state law regarding possession and use of marijuana. However, as of the date of this Order, the Court of Appeals has not taken a different position regarding the automobile exception and district courts have continued to find probable cause for a vehicle search even in cases where

6

In *United States v. Robbins*, No. 16cr1997JM, 2016 WL 6565922, at *5 (S.D. Cal. Nov. 3, 2016), the district court denied a motion to suppress on similar grounds. Officers approached the defendant because his car did not have a front license plate, and then asked if he had anything "illegal" in the car, to which he admitted having marijuana. The district court agreed with the government that this provided probable cause to search the car under the automobile exception. In so finding, the district court rejected the defendant's argument that there was no probable cause to search the trunk because possession of a small amount of marijuana was an infraction under California law, and not an arrestable offense. *Id.* Among other reasons, the district court noted that transportation of marijuana was an arrestable offense to which the defendant had admitted. *Id.* (citing Cal. Health & Safety Code § 11360).

California courts are in accord, upholding searches under the automobile exception based on the odor and sight of even small amounts of marijuana, irrespective of state medical marijuana laws permitting the possession of up to eight ounces and irrespective of state law making possession of up to 28.5 grams of non-medical marijuana an infraction only. *See, e.g., People v. Waxler*, 224 Cal. App. 4th 712, 715, 717 (2014). Although California law provides for the possession and use of marijuana for medical purposes, the California Supreme Court has held that the Compassionate Use Act of 1996 (the medical marijuana statute) does not grant individuals immunity from arrest. *People v. Mower*, 28 Cal. 4th 457, 468-69 (2002); *see also People v. Kelly,* 47 Cal. 4th 1008, 1012-13 (2010) ("[T]he CUA provides an affirmative defense to *prosecution* for the crimes of possession and cultivation. . . . The CUA does not grant immunity from *arrest* for those crimes, however."); *People v. Strasburg*, 148 Cal. App. 4th 1052, 1055 (2007) (affirming denial of motion to suppress because "the Compassionate Use Act provides a limited defense against prosecution, but does not provide a shield against reasonable investigations and searches.").

In *Strasburg*, an officer smelled the odor of marijuana coming from the defendant's car. The defendant stated that he had just been smoking marijuana and that he had a medical marijuana

---

the state has since enacted medical marijuana laws or has otherwise decriminalized marijuana.

7

card (which the officer did not ask to see). 148 Cal. App. 4th at 1055. When questioned, the defendant said that he had marijuana in the car, and retrieved a plastic bag containing about three-quarters of an ounce. *Id.* The officer then saw another bag of marijuana containing 2.2 grams. *Id.* A search of the vehicle later revealed 23 ounces of marijuana and a scale. *Id.* at 1056. The California Court of Appeal upheld the search of the vehicle despite the fact that the defendant had a medical marijuana prescription. The court explained that the officer "had probable cause to search for marijuana after he smelled the odor of marijuana." *Id.* The court went on to state:

> Given the probable cause here, the officer is entitled to continue to search and investigate, and determine whether the subject of the investigation is in fact possessing the marijuana for personal medical needs, and is adhering to the eight-ounce limit on possession. Unlawful possession of marijuana remains a criminal offense under Health and Safety Code section 11350, subject to seriously ill persons using marijuana for medical purposes recommended by a physician (section 11362.5(b)(1)(A)) not being subject to criminal liability (section 11362.765).

*Id.* at 1060.

In *Waxler*, an officer conducted a search of a vehicle after he smelled the odor of burnt marijuana and saw a pipe with burnt marijuana on the bench next to the driver's seat. 224 Cal. App. 4th at 715. Again, the Court of Appeal found there was probable cause to search the vehicle under the automobile exception, stating: "California courts have concluded the odor of unburned marijuana or the observation of fresh marijuana may furnish probable cause to search a vehicle under the automobile exception to the warrant requirement." *Id.* at 718 (citations omitted). The fact that the defendant showed his medical cannabis card to the officer did not change this. *Id.* at 716, 725. It was "well settled that even if a defendant makes only personal use of marijuana found in the passenger compartment of a car, a police officer may reasonably suspect additional quantities of marijuana might be found in the car." *See id.* at 723-24 (citations omitted); *see also United States v. Liu*, No. 2:13-CR-00050-KJM, 2015 WL 163006, at *5 (E.D. Cal. Jan. 7, 2015) (denying motion to suppress because even if the officer saw defendant's medical marijuana card, "the strong odor of marijuana gave Barnes probable cause to search the car's trunk to determine whether Li in fact possessed the marijuana for personal medical needs . . . or the transportation of marijuana was 'reasonably related to [her] medical needs.'") (citations omitted).

Defendant makes much of the fact that the marijuana the officers saw was later determined to weigh less than one ounce. *See* Reply at 3. However, the California Court of Appeal has explained that "neither the California Supreme Court nor the United States Supreme Court has limited the automobile exception to situations where the defendant possesses a '*criminal* amount of contraband.'" *Waxler*, 224 Cal. App. 4th at 723. In *Strasburg*, the court affirmed the denial of a motion to suppress even though the defendant's medical marijuana prescription meant he "could lawfully possess an amount of marijuana greater than that [the officer] initially found[.]" 148 Cal. App. 4th at 1059. There, the officer smelled marijuana, saw a bag containing roughly three-quarters of an ounce, and saw another bag containing 2.2 grams, all of which totaled slightly less than what the defendant here turned out to possess. *See id.* at 1055. Likewise in *Waxler*, the officer smelled burnt marijuana and saw a pipe that was later determined to contain 0.3 grams of the substance. 224 Cal. App. 4th at 717. This amount justified a vehicle search under the automobile exception. *Id.* at 725 ("The automobile exception is not limited to situations where the officer smells or sees more than 28.5 grams of marijuana in the vehicle (§ 11357, subd. (b)); the observation of any amount of marijuana—which is currently illegal to possess except as authorized by the CUA—establishes probable cause to search pursuant to the automobile exception."); *cf. United States v. McCall*, 268 Fed. App'x 646, 648 (9th Cir. 2008) (in affirming denial of suppression motion, stating, "the officer was not obligated to accept as true what the driver claimed, that the amount of marijuana in the car was merely a 'roach'").

To summarize, the officers here had probable cause to search defendant's vehicle under the automobile exception once they saw a plastic bag containing roughly one ounce of marijuana in plain view. This is particularly so because the odor of marijuana alone is sufficient to provide probable cause for a vehicle search for marijuana. *See Barron*, 472 F.2d at 1217. Nor does it negate probable cause that the marijuana was later determined to weigh less than one ounce. *See Robbins*, 2016 WL 6565922, at \*5; *Waxler*, 224 Cal. App. 4th at 725. Finally, although the possession of a cannabis card is part of the totality of the circumstances that the officer must assess in determining if there is probable cause, whether or not the defendant has a cannabis card is not dispositive. *See Waxler*, 224 Cal. App. 4th at 725. The multiple searches of the vehicle

9

here were valid under the automobile exception.

The Court further declines defendant's request to suppress the fruits of the latter search, in which officers discovered the hidden compartment in the air vent. Unlike searches incident to arrest, the automobile exception does not require that the search occur roughly contemporaneous with the arrest or with the seizure of the vehicle. In *Johns*, the Supreme Court found it was not unreasonable to conduct a warrantless search of packages within a vehicle under the automobile exception, even though the search occurred three days after the packages had been unloaded. 469 U.S. at 487-88. The Ninth Circuit subsequently stated (albeit in dicta) that a delay of one hour and twenty minutes would not invalidate a search under the automobile exception, pursuant to *Johns*. *Camou*, 773 F.3d at 942.[6]

For these reasons, the Court finds that the multiple searches of defendant's car were reasonable under the automobile exception and DENIES defendant's motion to suppress the fruits of those searches. This includes evidence of the coffee grinder, plate, playing card, straw, narcotics in the hidden compartment, handgun, and ammunition.

## II. The Search of Defendant's Person Was a Valid Search Incident to Arrest.

Having determined that the automobile exception allowed for the searches of defendant's vehicle, the Court need not reach the government's other arguments in support of the vehicle searches. *See* Opp'n at 16. However, the Court is still called on to determine whether the officers made a valid warrantless arrest, as the government argues that the search of defendant's person (which resulted in the seizure of $805.00) was a search incident to arrest. *See id.* at 14. The Court finds this to be a much more difficult call.

An officer making an arrest may "conduct a search of the area within the arrestee's 'immediate control,' that is, 'the area from within which [an arrestee] might gain possession of a weapon or destructible evidence.'" *Camou*, 773 F.3d at 937 (citing *Chimel v. Cal.*, 395 U.S. 752,

---

[6] The question in *Camou* centered around whether a cell phone should be considered a "container" for purposes of a search under the automobile exception. The Ninth Circuit held that it was not.

10

763 (1969)). Such searches are permitted pursuant to a *lawful* arrest. *Id*. The Fourth Amendment requires that an arrest be supported by probable cause. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "Probable cause exists when, under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that a crime was committed." *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) (citation and internal quotation marks omitted). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. [Citations.] That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). "Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest." *Id.* at 155.

Here, the government argues that the officers had probable cause to arrest defendant on suspicion that he had committed two crimes: possession of marijuana for sale, in violation of California Health and Safety Code § 11359, and child endangerment, in violation of California Penal Code § 273a(a).[7] Opp'n at 1, 6, 14; Cowans Decl. ¶¶ 18-20. In support of the marijuana crime, the police point to what they were able to view through the windows of the vehicle: (1) "a small black digital scale in plain view" and (2) "what appeared to be, and what MPPD later confirmed to be, a significant quantity of marijuana . . . in plain view in a clear plastic bag near the front center console of the [vehicle]" and which later was revealed to weigh approximately 23.94 grams. Cowans Decl. ¶¶ 16-18; *see also* Sample Decl. ¶¶ 16-18. The government states that these facts, coupled with "the officers' experience policing narcotics trafficking in the East Palo Alto area," created a "'fair probability' that the marijuana was for sale, as opposed to personal use." Opp'n at 14.

The Court has reservations that the facts presented here gave the officers probable cause to

---

[7] At the time of defendant's arrest, the statute barring possession of marijuana for sale read, in full: "Every person who possesses for sale any marijuana, except as otherwise provided by law, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code." Cal. Health & Safety Code § 11359 (eff. Apr. 4, 2011).

11

arrest defendant for the crime of possession of marijuana for sale.[8] Nevertheless, under the law of this circuit, there was probable cause to arrest defendant for possession of marijuana, even if the facts supporting arrest for possession of marijuana for sale are thin. On the date that defendant was arrested, California law barred the possession of marijuana, unless otherwise permitted by law. *See* Cal. Health & Safety Code § 11357. California courts also made clear that the state medical marijuana law "provides only an affirmative defense to prosecution; it does not create a new standard for probable cause, search or arrest." *Stewart v. Morris*, No. 10-CV-04106-NJV, 2013 WL 5268977, at *8 (N.D. Cal. Sept. 17, 2013) (citing *City of Claremont v. Kruse*, 177 Cal. App. 4th 1153, 1171 (2009)). Accordingly, courts within the Ninth Circuit have found probable cause to arrest a defendant for possession of marijuana based on similar or less egregious facts than those present here. *See, e.g., Sales v. City of Tustin*, 649 F. App'x 615, 616 (9th Cir. 2016) (in action brought under 42 U.S.C. § 1983, finding that officers were entitled to qualified immunity because an officer "has probable cause to arrest an individual for possession of a controlled substance when that individual admits he has marijuana") (citing, inter alia, *People v. Kelly*, 47 Cal. 4th 1008 (2010); Cal. Health & Safety Code § 11357(a) (2011)); *Johnson*, 224 F. Supp. 3d at 885-87 (denying motion to suppress where the smell of marijuana, defendant's "unusual behavior in feigning a search through the glove box," and presence of empty pill bottles and plastic bags gave officer probable cause to arrest defendant for possession of more than 28.5 grams of marijuana, possession for sale, and transportation, in violation of California Health and Safety Code sections 11357, 11359, and 11360).

Additionally, even if the defense were correct that the officers lacked probable cause to *arrest* defendant for marijuana crimes, they had probable cause to *search* his vehicle under the automobile exception, as discussed above. They would thus have inevitably discovered items that

---

[8] Even weaker is the government's argument that defendant was properly arrested for child endangerment, in violation of California Penal Code § 273a(a). That subsection requires "circumstances or conditions likely to produce great bodily harm or death . . . ." The facts of this case—a child in the front passenger seat of a car, not in a child restraint system, within arm's reach of a bag of unlit marijuana—without more, do not provide probable cause to believe that this crime was being committed.

12

gave them probable cause to arrest defendant. The initial search of the vehicle quickly revealed various objects (the coffee grinder, plate, straw, and playing card), lying on the floor of the driver's side of the car, containing what Detective Sample identified as heroin residue. Sample Decl. ¶¶ 22-23; Paidipaty Decl. Ex. 3, Sample Video 1 at 2:53-3:21 (plate, playing card, and straw visible on driver's side floorboard), 5:00-5:40 (coffee grinder removed from vehicle), 7:10 (plate, playing card, and straw removed from vehicle). At that point, even if probable cause to arrest for possession of marijuana were lacking, the officers had probable cause to arrest for possession of heroin. *Cf. United States v. Ruckes*, 586 F.3d 713, 718-19 (9th Cir. 2009) (affirming denial of motion to suppress where, even if the vehicle search was not a valid search incident to arrest, officer would have inevitably discovered gun and cocaine once vehicle was impounded and vehicle inventory taken). Once defendant was arrested, the search of his person was a valid search incident to his arrest. For this reason, the Court DENIES the motion to suppress evidence of the $805.00 found on defendant's person.

Having denied the defendant's motion to suppress the fruits of the various searches of the vehicle and of his person, the Court also at this time DENIES the motion to suppress defendant's statements that arose out of the traffic stop and arrest. Defendant clarified at the hearing that his motion to suppress his statements derived from his argument that the arrest and searches were unlawful. The parties agreed, and the Court concurs, that the defense may re-raise any issues regarding suppression of defendant's statements under *Miranda v. Arizona* at the time of trial.

## CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion to suppress in full.

**IT IS SO ORDERED**.

Dated: January 5, 2018

_____
SUSAN ILLSTON
United States District Judge